In this country, only a small percentage of criminal cases go to trial, and that's a huge most end in pleas, a plea of guilty. And usually those pleas are part of a plea agreement where the government agrees to drop some charges, maybe agrees to a lesser sentence or something like that. When there is a plea agreement, the government has to honor its commitments, and the question in this case is whether the government honored its commitments with respect to a plea agreement in speaking when the defendant was being sentenced. There's also another issue in this case that comes up fairly often in our system, and that is even if there was an error, was the defendant prejudiced by that error? Because if the defendant was not prejudiced by the error, then we overlook the error. So will we hear an argument, I think, on both issues, whether the prosecutor did comply with the terms of the agreement, and if not, whether the defendant was prejudiced by that. So Mr. Ruiz, if you would like to answer that. Let's see who we have here. Mr. Hansmeier, excuse me. Judge Hartz, and may it please the Court, Dan Hansmeier on behalf of the defendant, Pasquale Ruiz. Prosecutor has a heightened responsibility not to breach a plea agreement. That heightened responsibility precludes the prosecutor from merely paying lip service to a promise made within a plea agreement. Prosecutor's statements may not, quote, undermine the prosecutor's promises, end quote. Prosecutor also may not, quote, inject material reservations about, end quote, any promises made within the agreement. As relevant here, a prosecutor breaches an agreement to recommend a specific sentence within the guidelines range if the prosecutor makes arguments inconsistent with that recommendation, even if the prosecutor technically recommends the agreed upon sentence, and that's what happened here. Why should we conclude, given what is in this record, it's full of information about your client's criminal history, and not only that, but the guideline range itself contemplates criminal history, that the district court would not have arrived at this conclusion itself? And so I'm asking you about the third prong. Right. So I think we have two answers on the third prong. The first is that what the district court did and the record created below actually supports our argument. And the second is that what the district court said below is irrelevant. So with respect to the first point on the third prong, the key here is the connection between what the prosecutor said, which was, you know, sentence him based on his criminal history, and what the district court did, which was depart upward based on the defendant's criminal history. So we think that connection in and of itself is why we can satisfy the third prong of plain air review. And I think it's critical that we just have to show a reasonable probability of a different outcome. That's not a very difficult burden. It's less than a preponderance. So you think the judge would not have sentenced as harshly if the prosecutor had acted the way you think the prosecutor should have? We think there's a reasonable probability of that, yes. And the judge had a recitation of very detailed information about this guy's prior history that went way, way beyond anything the prosecutor said, indicating that the judge had been thinking about criminal history carefully. So I think the key, though, is that when you have an agreement between the parties, you know, everyone's there saying 51 months is good. I think that sets a different tone than when you have one party saying, yeah, 51 months, but do it because he has a terrible criminal history. I mean, it's just, there's a different vibe there, I think. I'm just having trouble. I've got his statement before me. He says three or four times, we're asking for 51 months. We agree with 51 months. 51 months is the appropriate amount. What sentence specifically do you think violated that plea agreement by saying, do more? So, it is sort of that whole paragraph there. Well, I've got the whole paragraph, five paragraphs actually all together. Yeah, yeah. It's on, I think maybe the easiest answer is the quote, the block quote on page six of our brief. So he said, so what he does twice is he says, I'm asking the court to impose that sentence, but I do believe a sentence of 51 months is called for in this case, given the defendant's criminal history. So he's saying, impose a bottom of the range sentence because of this guy's criminal history. And then he then lists all of these convictions by name, and then he ends with, I believe, Your Honor, given the nature of his criminal history, a sentence of 51 months is appropriate. So, I mean, we talk about this in our brief, but this is rhetoric. This is hypothesis and rhetoric. The brief says we can defend that because he didn't want a downward departure. Yeah. But I don't see in the sentence, in the statements made, don't give a downward departure. And my question is, did the defendant ask for a downward departure? Was there anything preceding his statements where the defendant had suggested that he might want to ask for a downward departure? No, absolutely not. And the prosecutor knew that, and the prosecutor's statements reflect that. But it was in the case, though, right? I mean, the PSR said, we're not recommending it, but you might want to consider an upward variance. The upward variance aspect was in the case? Is that what you're asking? Yeah. And when I say in the case, I mean, you did ask for it, but it was out there for the district court to pay attention to. The prosecutor certainly knew about it. Yes. And so, why isn't it a plausible reading of the statement to say the prosecutor to be thinking, well, this is in the case, and I'm going to argue in favor of the 51 months and just explain why we think in light of this comprehensive criminal history, 51 months is still appropriate. So I think I'm a little confused. A downward variance or departure I don't think was ever in the case. No, an upward variance. So if that's the question, yes, the PSR actually said, you know, there's maybe some grounds for an upward departure. So I think that helps me, because it makes no sense for a prosecutor to say, don't, I mean, what the prosecutor said was don't go down based on his criminal history. The prosecutor didn't say don't go up based, I mean. Well, he said both. He said 51 months is right. I mean, I guess if you accept that, that means don't go below 51. Don't go above it. He says 51 is the right amount. But he's doing it, but he's not really saying that. I mean, that's the problem with this case. I mean, we have 30 years of precedent from this court that says you can't implicitly breach a pre-agreement. The precedent, at least that I'm familiar with, we do have a lot of cases, and I'm not going to represent, I've read them all again or refresh myself on all of them again. But most of them, there's much more of a wink and a nod than there is in this case. This case has less of a, yeah, you could justify a higher amount. You certainly could justify a higher amount, Judge, but we recommend this other amount. I don't see the flagrancy here that we often see when we find a violation. I mean, I think like we said in our brief, if you're going to say that a prosecutor can do this in this case, it just wasn't that bad. I mean, you're just laying a roadmap for prosecutors to do this in every case, and you're undermining- What words did he say that you think were wrong? I mean, how would you have edited his remarks to avoid the error? I've read this, and I just don't find anything in here that seems to violate the requirement of this plea agreement. So I'd like to have you point out the sentence that you think carries this hidden meaning, dog whistle is the best way to go because it were to go up higher. Yeah, so I just read it. I don't have anything other to read. It's the given the nature of the defendant's criminal history, that aspect of the statement. When he says, sentence at the low end given the nature of the defendant's criminal history, that is nonsensical. No criminal defense attorney would stand up and say, Judge, give my guy a sentence at the low end of the range because he has a terrible criminal history. But the government isn't the criminal defense attorney. I mean, the government is supposed to be not an unpersuasive advocate, right? But this prosecutor in this case signed a plea agreement saying, I will recommend the low end of the range. This prosecutor in this case did not have to sign that agreement. He could have said, I don't want to recommend the low end range. Doesn't the agreement also say that the prosecutor has the right to bring to the court's attention any negative criminal history? So that's paragraph 12. That's the full disclosure paragraph. The government does not rely on that paragraph. It's not in this case. But it does say that. It says that, but again, that's not, the government has not said, has not defended the prosecutor's comments under that paragraph. That same language was in Villa-Vazquez. It's just that language, you know, you read plea agreements in context as a whole. And if that language were to usurp, you know, the earlier recommendation, it would cause a lot of problems in Kansas and probably elsewhere. I mean, what we're asking for is a very simple rule. This court's precedent makes it clear that prosecutors don't have to do things enthusiastically. There's even a case from this court where the prosecutor actually didn't even make the recommendation. It was just in the PSR, and this court said it was okay. So this prosecutor literally could have just not said anything in abide by the agreement. What is the simple rule you want? The rule I want is the rule I think this court has, and that is, you cannot, and I quoted this at the beginning, you cannot, you know, undermine your promises. You cannot inject material reservations about the agreement. That's the rule. Well, I'm not sure that the prosecutor did say that he or she, I don't remember, had material reservations, but earlier you were focusing on the fact that there was no possibility, no one was suggesting a sentence below the agreement. If there was a hint of that, then this would have been okay? That's a different case. That is definitely a different case. So there is precedent on that. We talked about that precedent in our reply brief. There's cases that sort of, I think you could argue either way. I'm not here arguing either way on that. My position is that there is not even, that this... You don't want a simple rule that absolutely forbids... No, I don't need that. But what do we do about the fact that the PSR suggested an upward variance? I mean, that's the most troubling aspect of the record for me, for your position, because it's explanatory, right? So your position is this prosecutor didn't have to say anything and it would all be fine, but he chose to highlight these aspects of recidivism, perhaps. Why can't we read that in the totality of this record as everyone knew the PSR had this, well, look at this criminal history, you might want to go up. And the prosecutor is saying, yeah, you probably saw that, but we still think 51 months. Because that's not what the prosecutor said. The prosecutor said, I think it's a Via Vazquez talks about how, you know, if there is this suggestion of an upward departure based on one thing, and the prosecutor makes that argument, that is actually, you know, a problem, not a solution. So here, the PSR is saying, you may depart upward based on criminal history, and the prosecutor is standing up saying, look at the criminal history. I mean, that is the problem. So if the PSR, you know, cuts your way on breach, how does it affect the third prong? So again, I still think the same way, because he is, because the prosecutor is highlighting the reasons why the court may go above the low end, that is your reasonable probability of prejudice. That was so obvious. That's why the PSR had recommended it. The judge had already spoken about the criminal history, and when the judge imposed sentence, he highlighted parts of the criminal history well beyond what the prosecutor mentioned here. So that's why it's hard to see any prejudice. But what's not. Or shown prejudice. But what's not obvious is whether he would get 70 months or something lower than 70 months. I mean, an upward departure would encompass a 16-4 month, a 65 month, a 66 month sentence. It's just, there is a reasonable probability that he would have done better. I'm running out of time. I just want to say one thing on prejudice, and my other point is that, because the remedy is resentencing in front of a different judge, I think if you have a plain breach, that goes to a different judge. So I don't understand why we even care what the district court said under the third prong. And that's in our brief. And I don't think the government had anything to say about that. But I do want to reserve the remainder of my time. Thank you. Mr. Mag. Good morning, your honors. May it please the court. Jared Mag on behalf of the United States. I do think that the court can look very closely at the third prong. And I think it really balances on the third prong. And the court can rule on that alone. But I want to highlight a little bit more of what Judge Abell, you had addressed, is what the court was looking at with respect to Mr. Ruiz's criminal history. And I would note, if you look at volume two at pages 27 and 30, even before Judge Milgren reaches a decision on the sentence, he begins to highlight and make reference to the defendant's criminal history. So it's not as if he is somehow triggered by the prosecutor's statement about the criminal history. As we note in our brief, he is quite aware of the significant history in this case. And so he begins by referencing that almost at the beginning, that the defendant's criminal history is at 20 but falls to 18 because they can't count any more than four individual points. Later on, when he's having the discussion with defense counsel, he again notes how bad the criminal history is. So this is even before he reaches the point in time where he makes the final decision on the sentence. But you couple that with the very first words out of Judge Milgren's mouth when he sentences the defendant. If you look at page 34, the defendant has made his statement and the colloquy is completed. And the very first words is, Mr. Ruiz's criminal history is nothing short of remarkable. Counsel, what does it mean for the government to be a persuasive advocate for the plea agreement? Well, the court, the case law I think is very clear is that the government can't act in a way that is detrimental to the contract that is written and act in a way against what both parties have signed on to in the agreement. The defendant has filed a number of 28 J letters and I think that is sort of strikes at the question that you're raising is each individual case has its own sort of particular nuances. In those particular cases that they file in the 28 J letters, you can see what the prosecution has done in a number of those cases. They've gone well outside of what the agreement really calls for. I think in the Mojica case, for example, the government puts in about 250 additional photographs. Why does it have to be such an egregious example, right? Here, there is what seems to me from this record, a lip service component. Why shouldn't we be reading the record that way? Even though certainly the government didn't put in a bunch of new evidence and so forth, it could have said nothing. It could have just said nothing, but it chose to say something. Why isn't that just lip service? It's not lip service because I think you have to look at the entire statement in context. I know that the defendant wants to take a significant issue with the prosecutor's statement about not going below 51 months. They seem to suggest that that is a nonsensical position to take. We're pushing back against that. The guidelines are advisory. Obviously, the judge could do what he wished to do and could have gone below 51 months. But when you look at the prosecutor's statement in its totality, the very last statement is we would ask that the court not go below 51 months. So there obviously was some concern for the statement to be made. Again, that I think highlights why the prosecutor had made the statement. What was the basis for that concern? Had anybody suggested that they might go below it? There's nothing in the record. There was no argument by the defendant to go below? The judge in his remarks never said go below? So it seems to me like that simply is just a non-issue in the case. There is nothing to support the statement in the context of there's nothing in the record about a motion being filed or any indication that the court would go below that. Which is precisely what makes it so strange because the only thing in the record is a suggestion in the PSR to maybe consider going up. So you would expect if the prosecutor was going to say anything, it's to say the government thinks 51 months is the appropriate sentence. Don't go up. Not don't go down. Understandable. And certainly, the prosecutor makes the statement at the beginning. Do not take my statements to suggest that the court should go above 51 months. So there's that predicate statement by the prosecutor saying, do not take what I'm about to say in a way that would lead you to go above 51 months. He finishes it by saying not going below 51. There's nothing in the record to show why he had concerns about going below the 51 months. The only thing I could draw from that possibly is we know that the defendant had sort of expressed some concerns about the defendant's health. Certainly, he was being asked to go to a medical facility. So there were obviously some issues there, but there wasn't anything directly placed in the record that anyone was asking for something to go below 51 months. Nevertheless, the prosecutors felt the need to make the statement in that context. But the predicate statement alone, I think, is what is important here. He says, do not take what I'm about to say to suggest I want you to go above 51 months. It would be different if he said, judge, we leave it to your discretion, but we'd ask that you concentrate on the criminal history. Had he said that, I think that's a different- He doesn't say above, right? He says anything other than. I mean, maybe it's not- Yeah, he says, I'm not suggesting in any way that I'm asking for a sentence of anything other than 51 months. So he has that predicate sentence to say, what I'm about to say is, do not go above that number. But the whole concern I think you're hearing from the members of the panel is, why say this at all? What's the reason for it? The more likely reason on this record is that the prosecutor was paying lip service- I think I should talk- Was paying lip service to the agreement, but was hinting at a harsher sentence. And if this weren't on plain air review, we might have more of a- It might be a very serious problem. But if in this case, we can- We would affirm this by saying, well, he was just protecting against a downward departure, downward variance. Then, as opposing counsel said, that would be a roadmap. Every single time you could make this statement. I agree that there's not a record here to support exactly what was in the prosecutor's mind as to why he said, don't go below the 51 months. All we have is the direct statement itself. But as we note in our brief, if there was this sort of insidious reason to try to get the judge to go above the guidelines or any sentence, they certainly had reason to do that if they were going to act in a way that this court has seen in other cases where the prosecutor goes way beyond what is necessary to sort of get the judge to act in a way that is contrary to what the parties are asking. This is such a very short statement on his part saying, we understand that the criminal history is enough to support 51 months. It's not an egregious example. It's just a unnecessary, there's a better word than unnecessary, example of doing this. And that's what's troublesome. And if this is actually a concern, maybe the prosecutor needs in the future to be explicit saying, we want to make sure that there's no, that you don't go below that. So we note the seriousness that's mentioned in the. Right. And I think to some degree, that's a little bit academic, because I think even if you dispense with the idea that there's error and any concession that there's error, this still balances on the third prong. And again, at the end of the day, nothing that the prosecutor said here triggered the judge into the decision that was made. Can you make your third prong argument specifically under the standard? I mean, the standard is reasonable probability, and that means of a lower, of a different outcome, right? And so it's, it doesn't take much. So how should we be thinking about that on this record? Is it sufficient to undermine the confidence in the outcome? I think based upon two things. One, the judge's statements prior to him rendering a decision and sort of forecasting his serious concerns about the criminal history. And then his opening statement into the sentencing phase or the sentencing portion about how remarkable his history was demonstrates how concerned Judge Mulgren was with his background. And I think as Judge Abell had stated earlier, Judge Mulgren goes into far greater detail about the criminal history of Mr. Ruiz in referencing the fact that his mother felt more comfortable when he's in prison. So he gets into some really significant detail about the fact that he'd spent the better part of the last 15 years in prison. Far beyond what the prosecutor had intimated at was really just the global history and how bad the defendant's history was, whereas Judge Mulgren gets into very specific detail. So it's very clear that the judge had given great thought to this in looking forward. So can this court feel confident that, but for the prosecutor, making these sort of global statements about the criminal history, he wouldn't have, he just simply wouldn't. Is that the standard? Well, I think it's sufficient to undermine the confidence in the outcome. It's a reasonable probability of a different outcome, right? Reasonable probability. Reasonable probability. Is there a chance that Judge Mulgren would have sentenced within the guidelines? The government says no. Would he have sentenced him lower by a month? I mean, if we get to the third prong, breach is in the case, and we're trying to assess what that did to the calculus, and how can we say it did nothing? I think because the statements alone were not so significant in the way that triggered Judge Mulgren to somehow reassess how he was going to sentence the defendant. So is it the government's position that the third prong, we are interested in the egregiousness of the breach? Well, I think it has to be. I think it has to look at the depths at which the government acted in a way that, if the court finds that there's error, of course, that how the government acted in a way to essentially breach the contract in a way that, as we said, led the court into making a decision. And I think this record is very clear. This court, well in advance, knew that the defendant's criminal history was significant enough that he was not going to sentence him to 51 months. In a way, how do you prove a negative? How do you prove that he wouldn't have given him 69 or 68 or anything between 51 and 70? I think if you look at how Judge Mulgren ruled, he did not hesitate. He didn't equivocate in any way. He was very specific about the criminal history. He was very specific about the sentence that he wanted to impose at 70 months. So I think it was very clear that he had had it in his head that he was going to give this sentence at the end of the day. So when you're talking about sufficient, you know, undermining the confidence in the outcome, I don't think there's anything in the record that undermines the confidence in the outcome of how Judge Mulgren reached his decision. Again, as I think Judge Archer, Judge Bell had said, this record is very clear. There's no question what we're talking about. This isn't some sort of amorphous or questionable issue about how bad his history was. We all knew that this is what was driving this. But the fact that Judge Mulgren had gone into such significant detail about his history, I think is really what drives that as to whether or not there's confidence in the outcome. Do you think that the government had a responsibility here in light of what was in the PSR to argue against the suggestion for an upward variance? I guess if I understand your question, I guess to some degree, I think the prosecutor did. He said, do not go above 51 months. I want to be responsive to your question. I guess I'm not completely understanding. I'm just trying to, I think what this case raises, irrespective of the disposition here, is what the government's obligation is to not be an unpersuasive advocate for the plea agreement. And it's incredibly consequential. And so the question that I'm trying to grapple with is, what is the scope of that responsibility and how the government actualizes it? And in this case, we have a PSR that doesn't affirmatively recommend an upward departure of variance, but says, you might want to think about this. In light of this, given the government's promise in the contract, what was the appropriate response for the government to take in, say, 51 months? So I see I'm out of time. If I could answer briefly. So I think to directly answer your question is, no, the government would not be in a position to have to vehemently argue that the court could not depart. The court has absolute every right to depart upwards or downwards. The court could have done what it wanted under the circumstances. In essence, I think what the prosecutor or what the defense is saying is it's going to lay a roadmap. We would argue, in some way, it's going to curb the government's ability to almost have to stand silent in these instances because of the fear of saying anything, one way or the other. All right. Thank you. Mr. Hansmeier, you have a minute and a half. All right. Thanks. Four points. Just real quick on that. Again, the prosecutor didn't have to sign this plea agreement. It's as simple as that. Second point, the facts of this case fall firmly within this court's precedent saying that this type of conduct is not okay. 1987, here's your precedent. 1987, Greenwood. 1996, Hawley. Judge Ebell, you wrote that. 1998, Brey. 2007, Katusha. Judge Hart, you wrote that. 2008, Villa-Vazquez. Judge Hart, you wrote that. Those cases are implicit breach cases. This case falls firmly in that line of precedent. Third point, the district court's statements prior to the prosecutor's statements. If you read that, all the district court is doing is identifying the guidelines range, the criminal history calculation. He's doing the Rule 32 thing that happens in every sentencing. It's not the same thing that happened in Lopez. Fourth point, on this idea that this isn't egregious enough to qualify as prejudicial. This is my point. I hope you understand this. The prosecutor talked about criminal history. The district court went up because of criminal history. If the prosecutor talked about the offense conduct and the district court— Is there any record showing or even suggesting that the district court was impressed by what the prosecutor said regarding criminal history? Given what Mr. So-and-so said, I really don't think I can agree with this. He's saying the same things. If you're asking if he said prosecutor— Explain what I'm missing here. Everything the judge says suggests an independent review of this criminal history and a decision to vary upward as a result. That's fine, but the question is whether there is a reasonable probability that he wouldn't have gone to 70 months if the prosecutor had not breached the plea agreement. That's all I need to show, and I think I can absolutely show it because of the connection between the prosecutor's statement and the reason for the departure. It's as simple as that. Thank you. Thanks. Thank you, counsel. Case is submitted. Counselor excused. Our next case is 23-20.